LACLEDE GASLIGHT CO. v. COTTONE.

(Circuit Court of Appeals, Eighth Circuit.   March 20, 1907.)

No. 2,410.

1. GAS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries, to plaintiff by being overcome by gas, caused by defendant's servant making an improper connection in a rooming house, evidence of defendant's negligence and plaintiff's contributory negligence *held* to require submission of the case to the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gas, § 16.

Liability of innkeepers for personal injuries to guest, see note to Clancy v. Barker, 66 C. C. A. 483.]

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

In order to justify a conclusion that plaintiff was guilty of contributory negligence as a matter of law, the evidence must be such as to require a finding that all reasonable men in the exercise of an honest and impartial judgment must draw the conclusion under the facts that he did not exercise ordinary care.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 83.]

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

I. H. Lionberger, for plaintiff in error.

F. H. Sullivan (Joseph Wheless, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge.   A patron of the gas company who kept a lodging house in St. Louis during the season of the Louisiana Purchase Exposition converted her kitchen and dining rooms into lodging rooms.   These rooms were not intercommunicating, except through a common hallway.   The former was occupied by one Russo and the latter by the plaintiff, Giovanni Cottone, both Italians who were in St. Louis representing exhibitors at the Exposition.   There was a gas stove in the kitchen with a pipe leading from it to a disused meter in the basement.   It was desired to make use of that stove, and the mistress of the house requested the gas company to connect it with the supply pipe either by the use of the old meter or by supplying a new one.   The company undertook to conform to this request, but the operative sent to do the work in some way, not necessary now to state, connected an old abandoned pipe with the meter.   This pipe had formerly extended through the kitchen to the room over the kitchen, and for some reason had come into disuse, had been cut near the ceiling of the kitchen, and the exposed end had been plugged only with paper. The operator, in doing the work, in some way connected this abandoned pipe with an operating meter, and left the house exposed to such effusion of gas as could escape through the paper plug.   Proper test on his part would have made the danger apparent and would have called his attention to his mistake, but he left the house obviously without making such test.   This was about 3 o'clock in the afternoon, while most of the inmates, excepting the plaintiff, were attending the Exposition.   During the following night plaintiff, who occupied

the room adjacent to the room in which the gas was escaping, was overcome and seriously injured. He recovered in an action brought in the circuit court against the gas company the sum of $1,650. The circuit court refused on the request of defendant to instruct the jury to find in its favor, and that action of the court is alone assigned for error.

The negligence of the company was so apparent from the proof adduced that the counsel for the company now candidly concede it, and rests his defense solely on the ground of contributory negligence on the part of the plaintiff. The law required the plaintiff to exercise ordinary care for his own safety; that is, that degree of care which ordinarily prudent persons usually exercise under like circumstances. The jury having found the issue of contributory negligence in favor of the plaintiff and against the defendant, we cannot weigh the evidence fairly tending to establish either side of the issue and pronounce upon its comparative force or value, but can only consider whether there was any substantial evidence to support the finding as made.

The plaintiff was a foreigner, only moderately familiar with our language. He was alone in the house at the time the company's agent went there to make the required connection, and out of curiosity, probably, went with him into the basement of the house where he was required to go to do his work. He saw the manipulation of the pipes, and observed some apparent testing of them by blowing into them; but whether he was familiar with the significance of those acts is not clear. He certainly did not know enough about gas fitting to have any appreciation of the serious mistake that was made. Soon after the workman left the house plaintiff noticed an odor of gas, which continued for two or three hours, but all the windows of the house were open, and, although plaintiff smelled the gas, he did not consider it dangerous. He then, about 6 o'clock in the evening, went out and did not return until about 10 o'clock. He testified that as he entered the house the gas was not so strong as when he went out; that he went into his room, tried to light the gas, and found that he could not do so, and according to his repeated statement on the witness stand did not smell any gas in the room. For these reasons, thinking there was no danger, he closed his windows and retired for the night. Plaintiff frankly testified that he was familiar with the smell of gas, and knew of its dangerous qualities when inhaled. When the mistress of the house returned soon after plaintiff had arrived, she smelled the gas and asked plaintiff what was the matter, and he said: "Your man, your gas man did it." It would be profitless to detail all the evidence, but the substantial features are as just stated. After a careful consideration of it all we are strongly impressed with the fact that the plaintiff, who was a foreigner, unfamiliar with our ways and not shown to have had any knowledge of the gas fitter's work, might reasonably suppose that the effusion of gas which he first noticed was temporary, the usual result of the disturbance of pipes in doing the work by the agent of the company which he had witnessed, and that, being unable to smell any gas in his room after finding by actual personal test that the illuminating gas was not even flowing through

the pipe to his room, he might reasonably enough have concluded that, if any leak continued, it was slight, and not in or about his room, and that he was in no danger. We think there was sufficient evidence to warrant the jury in finding that plaintiff used ordinary care for his own protection. Certainly we cannot say that on the evidence adduced all reasonable men in the exercise of an honest and impartial judgment must have drawn the conclusion that he did not exercise ordinary care. Such must have been the state of the proof before we can say as a matter of law that the trial court erred in not instructing a verdict as requested. Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Texas & Pacific Ry. Co. v. Gentry, 163 U. S. 353, 358, 16 Sup. Ct. 1104, 41 L. Ed. 186; Crookston Lumber Co. v. Boutin (C. C. A.) 149 Fed. 680.

Finding no error in the proceedings below, the judgment is affirmed.